UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES BROMMER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>BELL TOWER INVESTMENT, LLC, A UTAH LIMITED LIABILITY COMPANY; AND DOES 1-100,<br><br>Defendants. | 4:25-CV-04185-CCT<br><br><br>**ORDER ON PENDING MOTIONS** |

Defendant Bell Tower Investment, LLC, filed a combined motion to strike pro se Plaintiff James Brommer's Rule 7.1 Disclosure and to dismiss Mr. Brommer's complaint. Docket 13. Mr. Brommer filed an opposition to both requests, Docket 17, and he filed an amended complaint, Docket 16. In its reply, Bell Tower maintains that dismissal of Mr. Brommer's suit is appropriate. Docket 18. While the motion to dismiss was pending, Mr. Brommer filed a motion for terminating sanctions and judgment against Bell Tower. Docket 22. Bell Tower moved to strike that motion. Docket 24.

## BACKGROUND

The Court accepts Mr. Brommer's allegations in his complaint as true and construes all reasonable inferences in his favor. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). Mr. Brommer states that he is 71 years old. Docket 16 at 7. He has an inactive attorney license, having not

1

practiced law since 1995. Docket 1 at 1; Docket 17 at 15. In August 2025, Mr. Brommer was living in Arizona when he negotiated a lease agreement with Bell Tower to rent an apartment in Scotland, South Dakota. Docket 1 at 1–2. Mr. Brommer's lease was to begin on August 15, 2025. *Id.* at 2. He prepaid the pro rata rental rate for August, a full month's rent for September, and a security deposit. *Id.* The lease, which is attached to the complaint, identifies a monthly rental rate of $575. Docket 1-1 at 2.

While Mr. Brommer was traveling to South Dakota from Arizona, he received a call from Bell Tower's Utah representative, informing him that the "apartment would not be available due to no air-conditioning (heat in South Dakota was ranging 90 degrees with some 80% humidity)." Docket 1 at 2. Mr. Brommer claims that because of "schedule requirements and penalties with rental equipment and no alternative living accommodations[,]" he "was required to secure a hotel and fragment the moving effort." *Id.* He asserts that he planned to store personal property at the apartment while waiting for air conditioning to be installed, but when he arrived at the apartment, it "was apparent the apartment had not been remodeled nor cleaned." *Id.*

He informed Bell Tower's Utah representative of this and indicated that "he would clean and paint the cabinets before moving food and food dishes[,]" which would result in "additional travel expenses (hotel, per deim [sic] costs, etc. and cleaning, paint supplies, labor, etc.)[.]" *Id.* at 2–3. Mr. Brommer claims that Bell Tower "knew" he "was under duress (travel fatigue, Age, economic

2

stress, etc.)" and that Bell Tower thereafter "assumed a coercive position in a take or leave the apartment." *Id.* at 2.

According to Mr. Brommer, after he took possession of the apartment, the following issues arose:

> the newly installed air conditioning was not encased in the wall allowing insulation and debris to be blown or circulated in the air of the apartment, the carpet had not been cleaned and contained some type of infestation such as fleas (dogs allowed in apartments), the toilet appeared to be leaking sewer with extensive water damage in the bathroom representing contamination like mold.

*Id.* at 3. As a result, Mr. Brommer "sustained bite rashes, congestion, [and] ill effects during the short tenure in the subject apartment." *Id.*

Mr. Brommer reported these issues to Bell Tower's Utah representative, and he claims that Bell Tower "was obstreperous, lacking in good faith in discussing mitigation[.]" *Id.* He asserts that Bell Tower's Utah representative offered an apartment exchange with a remodeled apartment that had been advertised, but the representative "terminated communications before any apartment exchange took place." *Id.* He claims that Bell Tower's South Dakota representative then "induced" him "to select between two of the remodeled apartments (Apt. 201 or 212) as a Cover or Cure apartment for the breach of contract that occurred with the untimely delivery and uninhabitable of Apt. 203." *Id.*

Mr. Brommer selected Apt. 212 and began to move his belongings into that apartment, but Bell Tower "misrepresented, repudiated the rent contract, and other facts unknown at this time of this pleading, to induce law

3

enforcement action by having a police officer reverse the move under a demand that all property be moved from the Cover/Cure apartment 212 immediately back to the uninhabitable Apt. 203, all under the threat of criminal prosecution" against Mr. Brommer. *Id.* Mr. Brommer moved his belongings back to Apt. 203, but the move "caused physical injury to [his] spine, feet, hands, shoulder, etc." *Id.*

On or about August 31, 2025, Mr. Brommer "removed himself" from Apt. 203 and was "forced to leave his personal property as he was unable to remove such property from Apt. 203." *Id.* He contends that he "attempted to gain permission to regain possession of his personal property," but he "has been precluded by obstreperous conduct, vague & ambiguous communications involving, improper legal threats, intimidation, fabrications, et. al." *Id.* at 4.

Less than a month later, Mr. Brommer brought this suit against Bell Tower on September 22, 2025. *See generally* Docket 1. He alleges claims for breach of contract, tortious breach of contract, fraud, malicious prosecution, intentional infliction of emotional distress, personal injury, conversion, general negligence, and negligent infliction of emotional distress. *Id.* at 4–5. He seeks injunctive relief and damages for the stated causes of action and also for defamation, libel, the Racketeer Influenced and Corrupt Organizations (RICO) Act, and Interstate Communication Act. *Id.* at 5–6. On October 15, 2025, Mr. Brommer filed a Rule 7.1 Disclosure "to inform the Court of its Federal Jurisdiction in this matter as it stands on multiple grounds of Federal Law

4

Questions, Diversity of the Parties, and, now, Federal Government Standing under VA Subrogation, at this time." Docket 9 at 3–4.

### MOTION TO STRIKE

Bell Tower moves to strike Mr. Brommer's Rule 7.1 Disclosure under Federal Rule of Civil Procedure 12(f) as "an improper, impertinent, and scandalous pleading." Docket 14 at 2. Bell Tower claims that "there is no reasonable basis in fact or law allowing Plaintiff to have filed this Disclosure" and, further, that he filed it "to pre-empt Defendant's arguments regarding subject matter jurisdiction" or "attempt to cure his obvious subject-matter jurisdiction shortfalls." *Id.* at 3.

Under Rule 12(f), on a timely motion by a party, "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). But a Rule 7.1 Disclosure is not a *pleading*. *See* Fed. R. Civ. P. 7(a) (defining what constitutes a "pleading"). Rather, it is a *statement* that must initially be filed by a party "with its first appearance, pleading, petition, motion, response, or other request addressed to the court[.]" Fed. R. Civ. P. 7.1(b). Therefore, Rule 12(f) does not apply here. However, even if this Court viewed the filing as a pleading, the Eighth Circuit views motions to strike "with disfavor" and states that granting such a motion "is an extreme measure" that should be "infrequently granted." *Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)).

Here, the circumstances do not warrant striking Mr. Brommer's Rule 7.1 Disclosure. The Court is aware that his filing is not a substantive pleading and will give the information in the document the weight it deserves, if any. The Court therefore denies Bell Tower's motion to strike Mr. Brommer's Rule 7.1 Disclosure.

## MOTION TO DISMISS

Bell Tower moves to dismiss Mr. Brommer's complaint for failure to file a proper pleading, lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to join a party. Docket 13 at 1. In response, Mr. Brommer filed an amended complaint.[1] Docket 16. He then filed an opposition to Bell Tower's motion to dismiss. Docket 17.

### I.    Mootness

Ordinarily, the filing of an amended complaint moots a pending motion to dismiss. *Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 951 (D.S.D. 2016). This is because "an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *Schlafly v. Eagle Forum*, 970 F.3d 924, 933 (8th Cir. 2020) (citation omitted). Here, however, it appears Mr. Brommer wants his amended complaint to

---

[1] Bell Tower asserts that Mr. Brommer's amended complaint must be stricken because "[a] party cannot merely file an amended complaint without court approval via the motion[,]" and Mr. Brommer did not request leave to file an amended complaint. Docket 18 at 3. Mr. Brommer was not required to file a motion requesting leave to amend his complaint. Under Rule 15(a), a party may file an amended complaint as a matter of course within 21 days after a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). Mr. Brommer filed his amended complaint within 21 days after Bell Tower's motion to dismiss. *Compare* Docket 13, *with* Docket 16.

supplement, rather than replace and render of no legal effect, his original complaint. For example, he did not reallege every cause of action in his amended complaint, but it is clear he does not want to abandon those claims because his amended complaint expressly "incorporates [his] prior pleadings," including his original complaint, Rule 7.1 Disclosure, and ex parte motion. Docket 16 at 3. Mr. Brommer also indicates in his response to Bell Tower's motion to dismiss that his original claims of "Fraud, Malicious Prosecution, Personal Injury, Negligence, Negligent Infliction of Emotional Distress, Other Claims, et.al."—which were not realleged in the amended complaint—are "now addended by the First Amended Complaint[.]" Docket 17 at 18; *see also id.* at 16–17 (claiming that this Court can determine subject matter jurisdiction based on his "pleadings as set forth in [his] original Compliant [sic] by incorporation").

The Court also considers that both parties have fully briefed the motion to dismiss, and Bell Tower's reply to Mr. Brommer's opposition to the motion to dismiss addresses Mr. Brommer's amended complaint. It would make little practical sense to moot the motion to dismiss when Bell Tower will refile the motion seeking dismissal of the amended complaint on the same grounds. *See Larson Mfg. Co. of S.D., Inc. v. Am. Modular Housing Grp. LLC*, No. 4:16-CV-04118-VLD, 2018 WL 627185, at *5–6 (D.S.D. Jan. 30, 2018) (addressing the dispositive motion to dismiss despite the filing of an amended complaint); *Parker v. Kearney Sch. Dist.*, No. 22-00454-CV-W-GAF, 2023 WL 12202099, at *2 (W.D. Mo. Apr. 26, 2023) (same); *Noorani v. Dir. of U.S. Citizenship and*

*Immigr. Servs.*, No. 8:25CV221, 2025 WL 1664344, at *2 (D. Neb. June 12, 2025) (same); *see also* 6 *Wright & Miller's Federal Practice & Procedure* § 1476 (3d ed. 2026) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.").

The Court therefore declines to render moot Bell Tower's motion to dismiss.[2] *See Cartier v. Wells Fargo Bank, N.A.*, 547 F. App'x 800, 804 (8th Cir. 2013) (recognizing that the district court has discretion to address the motion to dismiss despite the filing of an amended complaint). However, because the amended complaint supplements the original complaint, the Court will read Mr. Brommer's original and amended complaints together when addressing Bell Tower's motion to dismiss. *See Kiir v. N.D. Pub. Health*, 651 F. App'x 567, 568 (8th Cir. 2016) (reasoning that the amended was "intended to supplement, rather than to supplant, the original complaint" and concluding that the original and amended complaints should have been read together); *see also Eblen v. City of Kan. City*, No. 4:18-CV-00297-DGK, 2018 WL 3468374, at *4 (W.D. Mo. July 18, 2018) (treating the amended and original complaints as the operative complaint when considering a motion to dismiss); *see also Raper v. Hildreth*, No. 1:23-CV-01034-SOH-BAB, 2023 WL 8723966, at *3 (W.D. Ark. Sept. 7, 2023) (addressing the motion to dismiss after concluding that the pro

---

[2] Because Mr. Brommer intends for his amended complaint to be read together with his original complaint and because he responded to Bell Tower's motion to dismiss, the Court declines to give determinative weight to Mr. Brommer's reference in his opposition to Bell Tower's motion to dismiss that the amended complaint renders moot Bell Tower's motion to dismiss. *See* Docket 17 at 18–20.

se plaintiff's amended complaint was "clearly meant to supplement, or be read together with, the original complaint").

## II.    Improper pleadings

Bell Tower seeks dismissal of Mr. Brommer's claims because the format he used in his pleadings does not comply with Federal Rule of Civil Procedure 10. Docket 14 at 10–12. Under that rule, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Mr. Brommer's original complaint is six pages long with headings and subheadings, but he does not use numbered paragraphs as required by Rule 10(b). Docket 1. His amended complaint is 36 pages long and similarly does not use numbered paragraphs. Docket 16. Mr. Brommer does not claim he in fact complied with Rule 10. *See* Docket 17. Rather, he explains that he pled his "claims on pleading paper versus hand written Court forms thereby setting out line numbers and pagination that set forth numbering on claims, causes of action, damages, et.al. as numbered" and substantially complied with Rule 10. *Id.* at 20.

While Mr. Brommer's pleadings are difficult to read, the Court declines to dismiss Mr. Brommer's original and amended complaints for his failure to comply with Rule 10(b). *See Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) (declining to dismiss pro se plaintiff's complaint for violating Rule 10(b)). One purpose of the rule is to give the defendant fair notice of the claims against him. *See id.* at 127–28. Bell Tower's motion to dismiss and reply to Mr. Brommer's response reveals that it was able to discern the crux of Mr.

Brommer's claims against it, and Bell Tower does not claim to be prejudiced. *See id.* at 128 ("[W]here the absence of numbering or succinct paragraphs does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted."). Moreover, as Bell Tower recognizes, dismissal is not the preferred remedy; rather, a more appropriate remedy would be to direct Mr. Brommer to re-plead the claims in accord with Rule 10(b). *See Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 906 (N.D. Iowa 2001). There is no need for Mr. Brommer to re-plead his claims.

### III.    Subject matter jurisdiction

Bell Tower contends that this Court lacks jurisdiction to consider Mr. Brommer's claims because he does not present a federal question and cannot meet the amount in controversy element requirement for diversity jurisdiction. Docket 14 at 4–5. In Bell Tower's view, this is a "run of the mill landlord tenant dispute" over a contract that lasted between 10 and 16 days. Docket 18 at 4; Docket 14 at 5.

Mr. Brommer responds that he presents a federal question via his RICO claim. Docket 17 at 16–17. He also contends that the amount in controversy requirement is met for diversity jurisdiction over his state law claims because "[d]amages are understood to extend beyond the estimated $100,000.00 at [the] time of the Compliant [sic]." *Id.* at 17. Alternatively, he asserts that this Court has supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. *Id.*

10

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, whether this Court has the power to hear Mr. Brommer's case is a threshold inquiry to be decided from the outset. *See Crow Creek Sioux Tribe v. Bureau of Indian Affs.*, 463 F. Supp. 2d 964, 967 (D.S.D. 2006). "A party challenging subject matter jurisdiction under Rule 12(b)(1) must attack either the facial or factual basis for jurisdiction." *Middlebrooks v. United States*, 8 F. Supp. 3d 1169, 1173 (D.S.D. 2014). "A facial challenge to jurisdiction only requires 'the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction[,]'" and "the non-moving party receives the same protections as it would defending a motion to dismiss brought under Rule 12(b)(6)." *Ngam v. Kludt*, No. 1:24-CV-01025-ECS, 2025 WL 2636587, at *3 (D.S.D. Sept. 12, 2025) (citations omitted). "A factual challenge, on the other hand, occurs when the face of the complaint 'is formally sufficient,' but the defendant argues that 'there is in fact no subject-matter jurisdiction.'" *Id.* (citation omitted).

The Court views Bell Tower's challenge to this Court's federal question jurisdiction to be facial because Bell Tower's argument is tethered to the allegations in Mr. Brommer's complaints. *See* Docket 14 at 4. However, Bell Tower's challenge to diversity jurisdiction is factual because Bell Tower argues that the circumstances here do "not generally or even imaginatively impose $75,000 in damages[.]" *Id.* at 5.

11

## A.      Federal question jurisdiction

Under 28 U.S.C. § 1331, federal district courts have jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution. Mr. Brommer seeks to invoke federal question jurisdiction by asserting a RICO Act violation. *See generally* Dockets 1 and 16. "To recover in a civil suit for a violation of RICO, a plaintiff must prove: (1) that the defendant violated 18 U.S.C. § 1962; (2) that the plaintiff suffered injury to business or property; and (3) that the plaintiff's injury was proximately caused by the defendant's RICO violation." *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 894 (8th Cir. 1999) (citing 18 U.S.C. § 1964(c)). In his amended complaint, Mr. Brommer alleges that Bell Tower violated 18 U.S.C. § 1962(a) and (b). Docket 16 at 10.

Under § 1962(a), "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a). Under § 1962(b), "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any

12

enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

Mr. Brommer's amended complaint alleges:

a Patten [sic] of illegal activities committed through Defendant operations whereby Defendant has used a criminal scheme to develop a platform to invest ill gotten gains as the beneficiary of criminal conduct in using those ill gotten gains as investments, such ill gotten investments derive from criminal activities that appear as an investment platform that can also be used as a money laundering platform, with Defendant required to invest these ill gotten gains into other activities.

Docket 16 at 11. He further asserts:

The Defendant's course of conduct involved complicit Actors controlled by Defendant under a standing operating plan that required 'course of conduct compliance' and is revealed herein by conduct of Defendant and its Actors in assisting criminal activities of fraud, extortion, other accompanying acts to support the criminal scheme in extorting monies, waivers of monies, forfeitures of monies, etc., herein also known as ill gotten gains, from prospective Renters, Renters, Individuals, etc., using unlawful debts, Abuse of Process in extracting monies, et.al., the scope of such criminal activity is unknown as concealed by Defendant's conduct herein.

*Id.* The predicate acts, according to Mr. Brommer, include wire fraud, fraud, and extortion, among other criminal acts. *Id.* at 13. He also claims that he suffered injury to his property as a result of Bell Tower's RICO Act violations. *Id.* at 20–21, 34.

Accepting Mr. Brommer's allegations as true, the Court finds he has pled sufficient allegations to invoke subject matter jurisdiction over his RICO claims. While the question whether his claims survive dismissal under Rule 12(b)(6) will be addressed below, dismissal under Rule 12(b)(1) is not appropriate.

**B.    Diversity jurisdiction**

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). The Court gleans from Mr. Brommer's original and amended complaints that he alleges state law claims for breach of contract, fraud, malicious prosecution, negligent and intentional infliction of emotional distress, conversion, and negligence. *See generally* Dockets 1 and 16. As it relates to these claims, the parties do not dispute that diversity of citizenship exists. Docket 14 at 5; Docket 17 at 17. However, Bell Tower specifically challenges whether the amount in controversy exceeds $75,000. Docket 14 at 5.

"Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994) (alteration in original) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)). "[W]hen a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *Missouri ex rel. Pemiscot Cnty. v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995); *Kopp v. Kopp,* 280 F.3d 883, 884 (8th Cir. 2002). Therefore, Mr.

14

Brommer must show that "a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp*, 280 F.3d at 885.

Mr. Brommer's original complaint notes that the course of events in this case occurred for "some 10 days." Docket 1 at 4. He claims that as a result of Bell Tower's conduct, he "incurred actual Damages required to mitigate the breach of contract, loss of residence[,] and defending against Defendants conduct herein[.]" *Id.* at 6. He also claims to have suffered "bite rashes, congestion, ill effects during the short tenure in the subject apartment" and "physical injury to [his] spine, feet, hands, shoulder, etc." from having to move his personal property from one apartment to another. *Id.* at 3. Mr. Brommer does not identify an alleged damage amount. Rather, he broadly claims:

> Damages are continuing, unknown, and are uncertain at the time of this Complaint, but Damages herein, include, and are not limited to, exemplary damages, punitive damages, actual, direct, consequential, mitigation damages, medical damages, personal injury damages, to health, to person, defamation, libel, litigation costs, et.al., and RICO Act, Interstate Communication Act, et. al., remedies and damages are further hereby reserved according to evidence at Trial.

*Id.* at 6.

In his amended complaint, Mr. Brommer realleges that Bell Tower "breached the subject contract, failed to mitigate the breach by failing to cure such breach," thereby causing injury to his person and property. Docket 16 at 3. He also realleges that the course of conduct lasted "some 10 days" and caused him to suffer "bite rashes, congestion, ill effects during the short tenure in the subject apartment" and "injury to [his] spine, feet, hands, shoulder, etc."

15

from having to move his personal property from one apartment to another. *Id.* at 4, 5. Mr. Brommer then identifies specific damage amounts, including $800 but not in excess of $1,000 for breach of contract and $1,150 for "theft" of personal property that contained intellectual property valued at over $1,000,000. *Id.* at 6–8, 20, 22–24, 26. He also, in his prayer for relief, requests "more than $1,000,000.00 in this matter by way of General Damages, compensatory, et.al., and in excess of 4,000,000.00 in special and punitive damages, not including trebled damages for RICO actions as against Defendant[.]" *Id.* at 36.

By Mr. Brommer's own representations, the parties' contractual relationship lasted between 10 and 16 days, and he suffered between $800 and $1,000 in contract damages and $1,150 from Bell Tower's conversion of his personal property. *Id.* at 5–8, 20, 22–24, 26. These amounts fall well below the jurisdictional threshold for diversity jurisdiction.

Also, although he claims that Bell Tower's acts resulted in the "theft of personal property containing intellectual property estimated worth in excess of $1,000,000.00 that contains operative research of some 15 years that has copyright value yet to be determined," *Id.* at 26, the South Dakota Supreme Court has explained that intangible personal property cannot be the subject of a conversion claim. *See Daktronics, Inc. v. McAfee*, 599 N.W.2d 358, 363–64 (S.D. 1999) (concluding that the tort of conversion does not apply to a person's ideas). Therefore, the alleged $1,000,000 in damages for "theft" of his

16

intellectual (intangible) property does not invoke this Court's diversity jurisdiction.

The Court acknowledges that Mr. Brommer alleges additional state law claims for fraud, malicious prosecution, negligence, and intentional and negligent infliction of emotional distress. *See generally* Dockets 1 and 16. However, he does not offer a factual basis for his claimed $1,000,000 in compensatory and general damages or his claimed $4,000,000 in punitive damages as it relates to these claims. Rather, these amounts are grossly exaggerated and bear no rational relationship to the allegations. Mr. Brommer also does not cite law entitling him to punitive damages under the circumstances.

Although pro se complaints are construed liberally, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), the Court concludes that Mr. Brommer's exorbitant damage amounts were not made in good faith, and he has not met his burden of showing by a preponderance of the evidence that the amount in controversy requirement is satisfied. Therefore, this Court lacks diversity jurisdiction over his state law claims. However, the Court declines to grant Bell Tower's motion to dismiss these claims under Rule 12(b)(1). Mr. Brommer's state law claims form part of the same controversy as his RICO claim, which gives this Court supplemental jurisdiction under 28 U.S.C. § 1367(a) over his state law claims. Whether the Court declines to exercise such jurisdiction under the circumstances will be decided after the Court addresses Bell Tower's additional argument that Mr. Brommer has failed to a plausible RICO claim.

## IV.    Failure to state a claim

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court "must accept a plaintiff's factual allegations as true" and construe all reasonable inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[D]etailed factual allegations are unnecessary" under the plausibility standard. *Spearfish Evans-Tonn Ditch Co. v. Horizon Invs., LLC*, 715 F. Supp. 3d 1219, 1225 (D.S.D. 2024). However, "labels and conclusions" and "'naked assertion[s]' devoid of 'further factual enhancement'" do not satisfy the plausibility standard. *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted). To meet the plausibility standard, "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pro se complaint, while construed liberally, "still must allege sufficient facts to support the claims advanced." *Stone*, 364 F.3d at 914.

### A.    RICO Act claims

Bell Tower asserts that Mr. Brommer's allegations, accepted as true, do not state a plausible RICO claim in part because personal injuries and pain and suffering do not provide a basis for a RICO cause of action. Docket 18 at 4. It further asserts that Mr. Brommer's RICO claims fail as a matter of law

18

because he does not "allege or address what comprises an enterprise under RICO, let alone what constitutes a pattern of actionable racketeering activity[.]" *Id.* at 4–5.

### i.    § 1962(a)

"RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) and 1964(c)." *Fogie*, 190 F.3d at 895. Therefore, "a civil suit for a violation of § 1962(a) must be limited to those plaintiffs whose injuries flow from the use or investment of the racketeering income." *Id.* at 896. It is insufficient to allege only an injury caused by the defendant engaging in the predicate racketeering acts. *Id.* at 895–96 (concluding that individuals injured by the predicate acts cannot bring a civil action under § 1962(a)).

Mr. Brommer alleges that Bell Tower acquired unlawful debt "to invest in other corruption, properties, et.al." and "into other activities" and caused him personal and physical injury and damage to his property and business. Docket 16 at 10–11, 16–21, 25–26, 34–35. But Mr. Brommer does not allege an injury from the use or investment of the unlawfully obtained income that is separate and distinct from the injuries he sustained by Bell Tower engaging in the predicate acts. Therefore, Mr. Brommer lacks standing to bring a RICO claim under § 1962(a), and Bell Tower's motion to dismiss this claim pursuant to Rule 12(b)(6) is granted. *See Fogie,* 190 F.3d at 896 (determining that the plaintiffs lack standing because they "have not and apparently cannot allege an injury from an use or investment distinct or separate from the predicate acts

19

they allege"); *see also Thares v. Wockenfuss*, No. 07-4050-KES, 2007 WL 9773405, at *3–4 (D.S.D. Nov. 28, 2007) (granting motion to dismiss because "[a] plaintiff cannot satisfy the use-or-investment requirement through proof that the alleged RICO enterprise reinvested the income it obtained from the predicate acts").

### ii.   § 1962(b)

Section 1962(b) bars the use of racketeering activity to "acquire or maintain . . . any interest in or control of any enterprise" engaged in or affecting interstate or foreign commerce. 18 U.S.C. § 1962(b). The Eighth Circuit has not specifically said whether standing to bring a suit under § 1962(b) requires an injury that results from an acquisition or maintenance of the alleged enterprise separate and apart from the injury suffered from the predicate racketeering offense. *See D'Addario v. D'Addario*, 901 F.3d 80, 97 (2d Cir. 2018) (referring to a secondary source for the proposition that the Eighth Circuit has not addressed the question). However, district courts in the Eighth Circuit have concluded that, like with a § 1962(a) claim, a plaintiff must allege an injury due to the defendant acquiring or maintaining an interest in, or control of, an enterprise. *Cheng v. Wilcox*, No. 23-CV-0737 (NEB/LIB), 2023 WL 4059770, at *4 (D. Minn. June 8, 2023); *Jason M. Hatfield, P.A. v. Ornelas*, No. 5:22-CV-05110, 2023 WL 8878203, at *7 (W.D. Ark. Dec. 22, 2023).

Applying that rule here, Mr. Brommer has not stated an injury independent of Bell Tower's acquisition or maintenance of an interest in the only alleged enterprise—Bell Tower. Rather, he offers the conclusory assertion

that "the Enterprise can be sued if it is the Entity acquired or maintained an interest in or control over investment properties such as in the subject property in Scotland SD, etc. . . ." Docket 16 at 11. He then alleges injuries that are directly related to Bell Tower's alleged racketeering activity. *Id.* at 13–21.

Construing the complaint and amended complaint liberally, Mr. Brommer has failed to state a § 1962(b) claim. Therefore, dismissal of this claim pursuant to Rule 12(b)(6) is appropriate.

### iii.    Pattern of racketeering activity

Although it is not necessary to further address the propriety of Mr. Brommer's RICO claims, the Court notes that even if his pro se complaint is construed to allege a sufficient injury under either § 1962(a) or § 1962(b), his claims would nevertheless fail to survive a motion to dismiss because he has not alleged facts supporting a pattern of racketeering activity.

> "[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." Continuity in this context refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." To satisfy the RICO continuity element, therefore, a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity).

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.,* 528 F.3d 1001, 1028 (8th Cir. 2008) (second alteration in original) (internal citations omitted); *UMB Bank, N.A. v. Guerin,* 89 F.4th 1047, 1055–56 (9th Cir. 2024).

Mr. Brommer alleges that open- and closed-ended continuity exists because Bell Tower's "criminal conduct requires time to be used effectively, hence, they have been exposed herein as these criminal Tools (predicate acts) were used over a very short period of time thereby exposing the pattern, the scheme, the criminal course of conduct, of an existing Racketeering operation." Docket 16 at 14–15. He further claims that he caused "Defendant to reveal a criminal enterprise through a criminal pattern multiple criminal (predicate) acts required to be used in a short time that exposes the criminal course of conduct as developed and existing over a long duration required by preparation and an investment that produced ill gotten gains that supports its intended use into the future." *Id.* at 18.

Mr. Brommer's conclusory statements that Bell Tower's acts establish an open- and closed-ended scheme are insufficient to state a plausible claim of a pattern of racketeering. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 356 (8th Cir. 2011) (concluding that threadbare recitals such as "ongoing scheme," "pattern of racketeering," and "participation in a fraudulent scheme," without more, are insufficient). His allegations are broad and nonspecific, and while he recites the elements of a RICO claim, he does not allege facts supporting that Bell Tower participated in a criminal scheme over a long period of time in connection with more than one victim or that the alleged predicate acts pose a threat of continued criminal activity. *See Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991) (concluding that evidence of a single transaction involving one victim over a short period of time is insufficient to

22

constitute a pattern of racketeering activity under RICO). Therefore, construing the original and amended complaints liberally, Mr. Brommer has failed to allege a scheme that is legally sufficient to constitute a pattern of racketeering activity.

As the Eighth Circuit explained, "RICO does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) (internal quotation marks omitted) (citation omitted). Further, civil RICO should not be used to convert an ordinary civil dispute into a RICO suit with potential treble damages. *Craig Outdoor Advert.*, 528 F.3d at 1029 (noting that the Eighth Circuit has rejected "attempts to convert ordinary civil disputes into RICO cases").

### B.   State law claims

While this Court previously acknowledged its supplemental jurisdiction under 28 U.S.C. § 1367(a) to handle Mr. Brommer's state law claims that are part of the same controversy as his RICO claim, the Court has discretion to decline to exercise supplemental jurisdiction when it has dismissed the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). "If the claim giving original jurisdiction is dismissed early in the action, 'before any substantial preparation has gone into the dependent claims, dismissing or remanding the [state claims] upon declining supplemental jurisdiction seems fair enough.'" *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000) (quoting 28

23

U.S.C. § 1367 cmt. at 835 (1993)). Also, the Eighth Circuit has advised that "courts should 'exercise judicial restraint and avoid state law issues wherever possible.'" *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000) (citation omitted).

Here, the case is at the motion to dismiss stage, no answer has been filed, and no discovery has been exchanged between the parties. Based on this and the dismissal of Mr. Brommer's RICO claims, the Court declines to exercise supplemental jurisdiction over his remaining state law claims. The Court therefore grants Bell Tower's motion to dismiss Mr. Brommer's state law claims. Because no claims remain, the Court need not address Bell Tower's additional argument that dismissal of the suit is warranted for Mr. Brommer's failure to join a party.

**REMAINING MOTIONS**

While the motion to dismiss was pending, Mr. Brommer filed a "notice for motion requesting terminating sanctions and judgment against defendant, points and authorities and supporting declaration (evidence)." Docket 22 (all caps and bold omitted). Bell Tower moved to strike the motion. Docket 24. While it is clear from Mr. Brommer's motion that he takes issue with the conduct of Bell Tower's attorney in this case, it is hard to decipher on what basis Mr. Brommer believes this Court has authority to grant his request for a "terminal remedy" by granting him "judgment on liability with restitution of damages against defendant." Docket 22 at 18; Docket 26 at 15. His request for such "terminal remedy" is based in large part on his view that criminal statutes

24

have been violated. He then claims that based on the violation of these criminal statutes, this Court has authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991), and 18 U.S.C. § 3663A to grant his requested relief, including his request for restitution. Docket 26 at 5–6.

If Mr. Brommer "believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings." *See Cragoe v. Maxwell*, No. 11-4188, 2012 WL 462960, at \*2 (D.S.D. Feb. 13, 2012). Also, contrary to Mr. Brommer's view, the Court does not have authority in this civil case to award restitution under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, because that statute does not apply to civil matters. 18 U.S.C. § 3663A(a). Finally, while a court has inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process[,]" *Chambers*, 501 U.S. at 44, Mr. Brommer does not direct this Court to authority supporting his requested relief—"order damages in restitution" for the "violation of criminal statutes[.]" Docket 26 at 6. Therefore, the Court denies Mr. Brommer's motion. As such, it is unnecessary to address Bell Tower's corresponding motion to strike.

## ORDER

For the reasons explained in the Court's decision, it is hereby

ORDERED that Bell Tower's motion to strike the Rule 7.1 Disclosure, Docket 13, is denied. It is further

ORDERED that Bell Tower's motion to dismiss, Docket 13, is granted. Mr. Brommer's RICO claims are dismissed with prejudice, and his state law claims are dismissed without prejudice. It is further

ORDERED that Mr. Brommer's motion for terminating sanctions, Docket 22, is denied. It is further

ORDERED that Bell Tower's motion to strike, Docket 24, is denied as moot.

Dated May 15, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE